# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

**JOHN W. DOBSON,**      *

     *

     **Plaintiff,**      *

     *        **Civil No. TMD 15-2796**

     **v.**      *

     *

     *

**CAROLYN W. COLVIN,**      *

**Acting Commissioner of Social Security,**      *

     *

     **Defendant.**      *

           **\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff John W. Dobson seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 13), Defendant's Motion for Summary Judgment (ECF No. 16), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 17).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1960, has a high-school education, and previously worked as a shipping and receiving worker, produce stock clerk, and restaurant manager. R. at 24-25, 158, 170. Plaintiff protectively filed an application for DIB on February 3, 2012, alleging disability beginning on January 26, 2012, due to vertigo, deafness in the left ear, and "giddiness." R. at 131-37, 155, 169. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 56-87, 91. On March 6, 2014, ALJ Michael A. Krasnow held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 27-55. On April 25, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of January 26, 2012, through the date of the decision. R. at 14-26. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 5, 2015. R. at 1-6. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On September 17, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.      State Agency Medical Consultants**

On April 20, 2012, a state agency medical consultant, W. Hakkarinen, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 73-76.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 74.  Because of Plaintiff's subjective episodes of vertigo, he occasionally could balance, but he could stoop, kneel, crouch, crawl, and climb ramps and stairs without limit.  R. at 74.  He could not, however, climb ladders, ropes, or scaffolds.  R. at 74.  Plaintiff had no manipulative or visual limitations, but his hearing was limited in his left ear, and he was to avoid concentrated exposure to noise, vibration, and hazards, such as machinery and heights, because of his unilateral hearing loss.  R. at 74-75.

On October 2, 2012, another state agency consultant, Aroon Suansilppongse, M.D., using the psychiatric review technique under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listing 12.04 relating to affective disorders (R. at 61).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  Dr. Suansilppongse opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration.  R. at 61.  Dr. Suansilppongse did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing.  R.

at 61.  Dr. Suansilppongse thus assessed Plaintiff's mental RFC (R. at 64-67) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) set realistic goals or make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 65-66.

On December 18, 2012, another state agency consultant, J. Biddison, M.D., again assessed Plaintiff's physical RFC.  R. at 62-64.  Dr. Biddison opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 62-63.  Plaintiff occasionally could balance, and he frequently could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 63.  Plaintiff had no manipulative or visual limitations, but his hearing was limited in his left ear, and he was to avoid concentrated exposure to noise, vibration, and hazards, such as machinery and heights, because of his unilateral hearing loss and vertigo.  R. at 63-64.

**B.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] alleges disability due to anxiety, deafness of the left ear, vertigo and feelings of dizziness.  In his function report he stated that he was extremely

4

nauseous most days and that he was unable to predict the days he was nauseated. He reported that his abilities to read, write and concentrate are limited due to the nausea.

In a function report dated March 31, 2012, [Plaintiff] stated that he feels nauseous from the moment he wakes until he goes to bed. [R. at 193.] He reported he becomes dizzy when he showers, and that he spends most of his time in bed. [R. at 194.] [Plaintiff] reported that he stated that he handled change in routine poorly since suffering from vertigo. [R. at 199.] Plaintiff stated that he is often jumpy and nervous due to vertigo. He reported that he wears glasses and has done so since 1985. [R. at 199.] [Plaintiff] stated that his condition has changed his life for the worse and that he is nauseated on a constant basis. [R. at 200.] [Plaintiff] reported that he no longer has a social life and cannot work due to vertigo. [R. at 200.]

In a subsequent function report dated September 29, 2012 he reported that he was seen [by] Dr. Mikhail Gendel, M.D., and that he receives medication for his headache and tinnitus in his left ear. [R. at 222.] He stated that he was prescribed Xanax, Meclizine and was told to get a physical. [R. at 222.]

R. at 21; *see* R. at 31-51.

## 2.    VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the unskilled, medium[2] jobs of packer, warehouse worker, or office cleaner. R. at 51-54.   According to the VE, his testimony was consistent with the *Dictionary of Occupational Titles*.[3] R. at 54.   An individual with a 20% reduction in productivity or work absences of two days per month could not sustain full-time employment. R. at 54-55.

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d

## III

## Summary of ALJ's Decision

On April 25, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 26, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a packer, warehouse worker, or office cleaner. R. at 19-25. The ALJ thus found that he was not disabled from January 26, 2012, through the date of the decision. R. at 26.

In so finding, the ALJ evaluated the severity of Plaintiff's mental impairments and found that he had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace. R. at 20. The ALJ then found that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except [Plaintiff] is limited to only occasional balancing and should never climb ladders, ropes and scaffolds. [Plaintiff] can do work requiring no hearing with the left ear. [Plaintiff] is limited to simple, routine, repetitive tasks. He is limited to work free of production rate or pace. [Plaintiff] can occasionally interact with co-workers and with the general public. He should avoid concentrated exposure to noise and vibration. [Plaintiff] should avoid moderate exposure to hazards.

R. at 20-21. The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

---

148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 22.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.    *See Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the Social Security Administration did not analyze all relevant evidence, maintaining that neither the ALJ nor the Appeals Council analyzed new and material evidence.  Pl.'s Mem. Supp. Mot. Summ. J. 3-6, ECF No. 13-1.  He further asserts that the ALJ did not properly determine his RFC and that the ALJ did not explain why Plaintiff's impairments did not cause any loss of productivity or absenteeism.  *Id.* at 6-8.  Plaintiff also maintains that the ALJ did not set forth a proper hypothetical question to the VE that set forth all of his specific limitations, so the ALJ erred in relying on the VE's testimony.  *Id.* at 9.  Plaintiff further contends that the ALJ did not correctly analyze the severity of his impairments on his daily activities and that the ALJ should have given more weight to the credibility of Plaintiff's subjective complaints.  *Id.* at 9-13.  For the reasons discussed below, the Court remands this case for further proceedings.

Social Security Ruling[5] 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[5]  Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

In assailing the ALJ's assessment of his RFC, Plaintiff contends, among other things, that, although the VE testified that a 20% loss of productivity or work absences of two days per month would result in an inability to maintain employment (R. at 54-55), the ALJ "did not explain why he did not find any loss of productivity or absenteeism caused by the primary symptoms of the Plaintiff's main severe impairments."  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 13-1.  Although "[i]t is reasonable to assume that [Plaintiff's] moderate limitations [in social

functioning and in maintaining concentration, persistence, or pace] translate into a decrease in productivity," *Sterling v. Colvin*, No. 1:13-CV-01132-SEB, 2014 WL 4328682, at *2 (S.D. Ind. Aug. 29, 2014), the ALJ's decision failed to address this issue and to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, he could remain productive for at least 80% of the workday.  While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion.'"  *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  "If the ALJ believed [Plaintiff's] moderate limitations would not significantly impact [his] productivity, he needed to articulate why.  Without such explanation, his decision is not supported by substantial evidence."  *Sterling*, 2014 WL 4328682, at *3.  Because this inadequacy in the ALJ's analysis frustrates meaningful review, remand is appropriate, and the Court need not address Plaintiff's remaining arguments.  *See Mascio*, 780 F.3d at 636.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.  Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: September 29, 2016                          _____/s/_____

Thomas M. DiGirolamo
United States Magistrate Judge